16 F.3d 420
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent.\\This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 Nancy DUNCAN, individually and d/b/a "Footsie Wootsie\
Machine Rentals" and Just Vibrations\
International, Inc., Plaintiffs-Appellants,
v.
Al STUETZLE, Lexington Scenery & Props, Ken Acton, Amuze\
Incorporated Attractions, Duell Corporation,\
Michael Weinberg, Acton Animation,\
Defendants-Appellees.
 No. 93-1474.\
 United States Court of Appeals, Federal Circuit.\
 Dec. 13, 1993.
 
 Before CLEVENGER, Circuit Judge, BENNETT, Senior Circuit Judge, and SCHALL, Circuit Judge.
 CLEVENGER, Circuit Judge.
 
 
 1
 Nancy Duncan, d/b/a "Footsie Wootsie Machine Rentals," and Just Vibrations International, Inc.\ (collectively, Duncan) appeal from the June 27, 1991, decision and order\[1] and the August 21, 1991, judgment of the United States District Court for the Central District of California granting defendants' (collectively, Stuetzle's) motion for summary judgment on all grounds and awarding costs and attorney fees.\ We\dismiss-in-part and\remand-in-part.
 
 
 2
 * The Footsie Wootsie, the property in question, is a commercial foot massage chair generally available at county fairgrounds, carnivals, and the like to massage various patrons' tired feet.\ In mid-1989, Stuetzle first contacted Duncan to discuss,\inter alia, the possibility of either acquiring Duncan's business or becoming the exclusive distributor of the foot massage chair.\ After several months of unsuccessful negotiations, and after Stuetzle had refused to sign a "Nondisclosure Agreement" containing a broad non-competition clause, Duncan terminated the ongoing\talks on March 5, 1990.
 
 
 3
 In April 1990, Stuetzle aided in incorporating Alston Attractions, Inc., (Alston) for the purpose of producing and distributing theme-oriented foot massage machines to amusement parks and other locations.\ Starting in August 1990, Alston marketed several designs for foot massage machines.
 
 
 4
 As a result of Stuetzle's continuing commercial activities, Duncan filed suit in California state superior court, San Luis Obispo County, on November 9, 1990, asserting on the face of the complaint state common law causes of action for misappropriation of trade secrets, unfair competition, and civil conspiracy.\ On November 27, 1990, after much motions practice not pertinent to this appeal, Stuetzle removed the case to the United States District Court for the Central District of California under\28 U.S.C. Sec. 1441(a)-(c) (1988), asserting that the complaint sought relief for patent infringement and therefore fell within the exclusive jurisdiction of the federal courts.
 
 
 5
 After unsuccessfully seeking a stipulation from Stuetzle as to the propriety of a remand to state court, Duncan filed a motion on May 24, 1991, to remand the case under\28 U.S.C. Sec. 1447(c) (1988).\ That same day, Stuetzle moved for summary judgment.\ On June 27, 1991, the court denied the motion to remand and granted Stuetzle's motion for summary judgment on all counts.\ Duncan timely appealed to the United States Court of\Appeals for the Ninth Circuit.\ The district court subsequently awarded costs and attorney fees to Stuetzle under Cal.Civ.Code Sec. 3426.4 (West Supp.1993).\ Duncan also timely appealed this decision to the Ninth Circuit, which consolidated the two appeals.\ After oral argument, the Ninth Circuit transferred the appeal to this court.\\Duncan v. Stuetzle, No. 91-55874 (9th Cir.\ Apr. 19, 1993) (order transferring case under\28 U.S.C. Sec. 1631).
 
 II
 
 6
 This appeal raises two issues: First, whether the district court erred in denying the motion to remand the case to the California state court from which the case was removed, an issue which\questions the jurisdiction at both the trial and appellate levels; and second, if not, whether summary judgment was properly granted.\ We first address the issue of our jurisdiction.
 
 
 7
 Whether this court possesses the jurisdiction to hear an appeal from a federal district court in a "patent" case necessarily depends on whether the district court's jurisdiction was grounded, in whole or in part, on the patent laws.\\28 U.S.C. Secs. 1295(a)(1),\1338(a) (1988).\ In making such determination, the failure of a complaint to reference section 1338 is not dispositive.\\\Morganroth v. Quigg, 885 F.2d 843, 846, 12 USPQ2d 1125, 1127 (Fed.Cir.1989).\ Rather, "[t]he critical inquiry is whether in fact the complaint asserted a claim arising under the patent laws." \\Id.,\12 USPQ2d at 1127; \\Kunkel v. Topmaster Int'l, Inc., 906\F.2d 693, 695, 15 USPQ2d 1367, 1369 (Fed.Cir.1990).\ This presents a question of law that this court reviews\ de novo.\[2] See Speedco, Inc. v. Estes, 853 F.2d 909, 911, 7 USPQ2d 1637, 1639-40(Fed.Cir.1988).
 
 
 8
 28 U.S.C. Sec. 1441(a) permits a defendant to remove to federal district court a civil action brought in a state court over which the federal courts have original jurisdiction.\ Federal supplemental jurisdiction facilitates removal of the entire case, including any otherwise nonremovable claims, once the existence of a "separate and independent ... cause of action" within the original jurisdiction of the federal courts is established.\\28 U.S.C. Sec. 1441(c).\ "Only state-court actions that originally could have\been filed in federal court may be removed to federal court by the defendant."\\\Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).
 
 
 9
 Once a case is removed,\28 U.S.C. Sec. 1447(c) (1988) provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case\shall be remanded."\ (Emphasis added).\ This provision is mandated by the fundamental principles that federal courts are courts of limited jurisdiction, only having the authority to adjudicate cases that fall within their constitutionally-prescribed and statutorily-mandated jurisdictional boundaries, and that parties cannot establish jurisdiction that otherwise would not exist absent the parties' litigation tactics.
 
 
 10
 Since Duncan timely moved the district court to remand the case to the California state court for want of jurisdiction, having brought its motion to remand before final judgment was entered,\we must determine whether the district court erred, under the patent\laws, in failing to grant the motion and therefore whether we even have jurisdiction over this appeal.\ That is, we must ascertain whether Duncan's complaint stated a claim under the patent laws.\ On the record before this court, we think it clear that the present case does not lie within the ambit of our authority.
 
 III
 
 11
 We determine whether a complaint states a cause of action arising under the patent laws by applying the well-pleaded complaint rule thereto.\\\Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 808, 7 USPQ2d 1109, 1113 (1988).\ If the patent law neither creates a cause of action nor is so intertwined with the case that the court must necessarily resolve a substantial question thereof, then the complaint fails to state a cause of action arising under the patent laws within the exclusive jurisdiction of the federal courts.\\Id.,\7 USPQ2d at 1113.\ We must carefully scrutinize the plaintiff's form of\pleading to judge whether our exclusive jurisdiction mandate has been satisfied.
 
 
 12
 Pertinent to this case, Duncan's state court complaint reads:
 
 GENERAL ALLEGATIONS
 
 13
 * * *\
 
 
 14
 * * *
 
 
 15
 4. ... DUNCAN personally owns the design patents, trade mark and service mark for the "FOOTSIE WOOTSIE" commercial foot massage machine, and the remaining Plaintiffs are licensed to use the name and the mark.
 
 
 16
 * * *\
 
 
 17
 * * *
 
 
 18
 \FIRST CAUSE OF ACTION\[3]
 
 
 19
 [For a Permanent Injunction Against All Defendants]
 
 
 20
 * * *\
 
 
 21
 * * *
 
 
 22
 10. ... [STUETZLE] ... wrongfully and unlawfully, under the guise of either purchasing ... DUNCAN's company, or becoming its national distributor, engaged in a campaign of acquiring proprietary information regarding [DUNCAN's] ... "Footsie Wootsie." \ Thereafter, ... STUETZLE markedly increased his presence in the foot massage chair market....
 
 
 23
 * * *\
 
 
 24
 * * *
 
 
 25
 12. ... STUETZLE's machines intentionally carry no identifying plates or numbers.\ Because of that fact, because of their resemblances to the "Footsie Wootsie," and because of the "Footsie Wootsie's" preeminence in the market, it is easy for the public to believe that it is using the "Footsie Wootsie" when, in fact, it is using one of [STUETZLE's] machines.\ By mimicking [DUNCAN's] design and failing to use identifying labels, ... STUETZLE is trading upon [DUNCAN's] good will.... [and] devastating that good will.
 
 
 26
 * * *\
 
 
 27
 * * *
 
 
 28
 \SECOND CAUSE OF ACTION
 
 
 29
 [For Unfair Competition Against All Defendants]
 
 
 30
 * * *\
 
 
 31
 * * *
 
 
 32
 18. [DUNCAN has] spent large amounts of money in marketing and advertizing the rustic and contemporary models of the "Footsie Wootsie" and in creating a consumer demand for the product within ... California....
 
 
 33
 19. ... [and has] acquired within the trade and with\its customers, generally, the reputation of manufacturing high quality foot massage chairs....
 
 
 34
 20. ... [STUETZLE] obtained proprietary information ... regarding ... the product's exterior and mechanical design, [DUNCAN's] marketing strategy[/business plan], the product's recent income, and the methods by which the machine was produced....
 
 
 35
 21.\ The foot massage chairs ... sold by [STUETZLE] are designed and calculated to deceive and mislead purchasers and consumers.... [into] believing that the chairs were manufactured [and] sold ... by [DUNCAN].
 
 
 36
 * * *\
 
 
 37
 * * *
 
 
 38
 24. [STUETZLE] ... engaged in the actions described ... with the intent to injure ... [DUNCAN's] business.\ These acts were done maliciously and oppressively.
 
 
 39
 * * *\
 
 
 40
 * * *
 
 
 41
 \THIRD CAUSE OF ACTION
 
 
 42
 [For Civil Conspiracy Against All Defendants]
 
 
 43
 * * *\
 
 
 44
 * * *
 
 
 45
 27. [STUETZLE] ... knowingly and willfully conspired\... to utilize [DUNCAN's] proprietary information ... to produce and\distribute a commercial foot massage chair which closely resembles the ... Footsie Wootsie.\\
 
 
 46
 28. ... [T]he tortious acts committed [are incorporated herein] by reference [to] the Second Cause of Action....
 
 
 47
 * * *\
 
 
 48
 * * *
 
 
 49
 32. [STUETZLE] did the things herein alleged maliciously and to oppress [DUNCAN]....
 
 
 50
 * * *\
 
 
 51
 * * *
 
 
 52
 Stuetzle argues mainly that this complaint clearly states a cause of action arising under the patent laws because each cause of action specifically incorporates by reference the general allegation that Duncan "owns the design patents, trade mark and service mark" for the Footsie Wootsie massage chair.\ Because none of the three causes of action allege either ownership of any specific proprietary information other than the\design patents, service marks and "trade marks," or that any of the proprietary information is "confidential" or "secret," Stuetzle reasons that the complaint must therefore state a cause of action under the patent laws.
 
 
 53
 To resolve the jurisdictional issue in this case, this court must determine
 
 
 54
 whether the plaintiff actually pleaded the elements required by the patent laws for a patent infringement claim[:] ...\ownership of a patent still in force, infringement by defendants, and requested ... relief [such as] treble damages and an injunction.\\
 
 
 55
 \Kunkel, 906 F.2d at 695, 15 USPQ2d at 1369.\ Use of the term "infringe," however, is not the talisman of pleading such an action.\ More specifically, a court reviewing a complaint
 
 
 56
 must give special attention to the relief sought by the plaintiff in determining whether it contains a cause of action\arising under the patent laws....
 
 
 57
 Id.,\15 USPQ2d at 1368-69; \\Air Prods. & Chems., Inc. v. Reichhold Chems., Inc., 755 F.2d 1559, 1562, 225 USPQ 121, 123 (Fed.Cir.),\cert. dismissed,\473 U.S. 929 (1985).
 
 
 58
 Duncan's complaint on its face relies on certain provisions of California state law under which the specific relief Duncan seeks is available.\ In the first cause of action, Duncan seeks a permanent injunction and cites Cal.Civ.Code Sec. 3422 (West 1970) and Cal.Civ.Proc.Code Secs. 526, 527 (West 1979 & Supp.1993), all of which relate to state law injunctive relief and the procedures for obtaining such.\ Duncan specifically does not rely on\35 U.S.C. Sec. 283 (1988) (injunction).\ In the complaint, Duncan also seeks damages for both\unfair competition and civil conspiracy and cites Cal.Civ.Code Sec. 3333 (West 1970), which provides the standard measure of damages for "the breach of an obligation not arising from contract." \ Nowhere does Duncan invoke\35 U.S.C. Sec. 284 (1988) (up to treble damages available).\ Moreover, Duncan does not attempt to rely on\35 U.S.C. Sec. 285 (1988) (attorney fees in "exceptional" cases), nor does Duncan attempt explicitly to recover Stuetzle's total profits under\35 U.S.C. Sec. 289 (1988) (additional remedy for infringement of design patent).
 
 
 59
 Further, much of the complaint is entirely irrelevant to stating a cause of action under the patent laws.\ For example, the first cause of action incorporates allegations of acquisition of proprietary information, deception, confusion of the public, and destruction of the good will of Duncan's business.\ Duncan's unfair competition cause of action includes\allegations of having a good reputation in the marketplace, misappropriation of Duncan's marketing strategy, business plan, information on the product's recent income and the methods by which the machine was produced, and public deception and malicious intent to injure Duncan's business.\ The third cause of action includes the same allegations as the action for unfair competition together with the additional\charge of civil conspiracy.\ These three sets of allegations are only consistent with state law causes of action.
 
 
 60
 Even so, Stuetzle argues that Duncan waived any right to object to the district court exercising jurisdiction over the case by not objecting to the initial removal from state court and by not moving to remand until the eve of trial.\\28 U.S.C. Sec. 1447(c), however, clearly commands that the district court\shall remand the case if it appears that the court lacks jurisdiction\at any time before final judgment.\\\Compare Vitarroz Corp. v. Borden, Inc., 644 F.2d 960, 963-65 (2d Cir.1981) (district court entitled to conclude that trademark infringement action grounded on\federal law even though arguable either way, since plaintiff did not\challenge jurisdiction of district court after removal).\ Even if a district court must remand a case to state\court for want of jurisdiction after having expended time and effort\in adjudicating the merits of the appeal, however, the court is not totally without recourse, for it has the discretion to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."\\28 U.S.C. Sec. 1447(c).
 
 
 61
 In light of the principle that "[t]he plaintiff is the 'master' of [his] complaint; where he may pursue state and federal claims, he is free to pursue either or both, so long as fraud is not involved,"\\Ultramar Am. Ltd. v. Dwelle, 900 F.2d 1412, 1414 (9th Cir.1990); \\see also The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25 (1913) (same); \\Air Prods. & Chems., 755 F.2d at 1562, 225 USPQ at 123, we cannot conclude that this complaint states a cause of action under the patent laws.\ Mere assertion of ownership of patent rights, without more, is not inconsistent with stating a pure state law claim.
 
 IV
 
 62
 Insofar as Duncan's complaint does not raise a patent law claim, the appeal is dismissed.\ We are not, however, in a position to dismiss the entire appeal because we cannot determine from the record before us whether Duncan's complaint states a cause of action under the federal trademark laws, namely the Lanham Act,\15 U.S.C. Secs. 1051-1127 (1988).\[4]\ We therefore remand the case to the district court for a determination on this issue.\ Any further action shall be consistent with this decision.
 
 
 63
 No costs.
 
 
 
 1\Duncan v. Stuetzle, No. CV-90-6395-R\(C.D.Cal. June 27, 1991) (summary judgment order).
 
 
 [2]
 The Ninth\Circuit's decision to transfer, based on its determination that it lacked appellate jurisdiction over this appeal, is plausible, and therefore is law of the case.\\\Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 819, 7 USPQ2d 1109, 1117 (1988); \\Xeta, Inc. v. Atex, Inc., 852 F.2d 1280, 1281, 7 USPQ2d 1471, 1472 (Fed.Cir.1988) (Under\Christianson, when one appellate court transfers a case, its "jurisdictional decision ... is the law of the case.").\ That the appeal was transferred, however, does not prevent this court from reaching the issue of whether Duncan's complaint properly set forth a cause of action under the patent laws, for\if no such cause of action was stated, the federal courts generally lack jurisdiction over the case under\28 U.S.C. Sec. 1338(a)
 
 
 [3]
 Each cause of action incorporates by reference the allegations contained in the General Allegations paragraphs
 
 
 [4]
 Neither party argues that the complaint states a cause of action under the Lanham Act.\ If the complaint does state such a cause of action, however, a question relevant to the federal courts' jurisdiction over\the case, then the district court did not err in denying Duncan's motion to remand the case to state court, and any further appeal would properly lie in the Ninth Circuit